UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

Case No.:_____

MENTAL HEALTH NETWORK, INC.
a Florida Corporation

    Plaintiff,

v.

SIMONE MARSTILLER, as Secretary of the
STATE OF FLORIDA, AGENCY FOR
HEALTH CARE ADMINISTRATION,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, MENTAL HEALTH NETWORK, INC. ("***Plaintiff***"), by and through its undersigned counsel, Duane Morris LLP, brings this action for declaratory and injunctive relief against Defendant, SIMONE MARSTILLER, in her capacity as Secretary of the STATE OF FLORIDA, AGENCY FOR HEALTH CARE ADMINISTRATION ("***Defendant***" or "***AHCA***"), and alleges as follows:

### NATURE OF THE CASE

1. This is an action of declaratory and injunctive relief based upon AHCA's unlawful attempt to summarily terminate Plaintiff's Medicaid Provider Agreement ("***Provider Agreement***") with no opportunity to be heard, which is in violation of federal law and regulations and violates Plaintiff's right to due process of law. The manner in which AHCA has attempted to terminate Plaintiff's Provider Agreement consists of sending a letter notifying Plaintiff that, pursuant to the terms of the Provider Agreement, AHCA is electing its right to

terminate the Provider Agreement on 30-days written notice.  Enforcement of this contractual provision violates the federal law that governs the Medicaid Program. This was made clear to AHCA when Federal District Court Judges Whittemore and Jordan rebuffed AHCA's attempt to terminate the Medicaid provider agreements of three Florida nursing homes and a home health care agency without cause.  *Vencor Nursing Centers East, LLC, et al. v. King-Shaw*, Case No. 8:00-cv-02051-JDW, [D.E. 38] (M.D. Fla. Oct. 11, 2000); *Yema Home Health Care, Inc. v. Levine*, Case No. 1:05-cv-21183, [D.E. 6] (S.D. Fla. May 3, 2005).

2. AHCA's action violates the federal laws governing the Medicaid Program. Unless the Court enjoins AHCA's unlawful action, a respected and well-established mental health care agency which provides care to juvenile and dependent Medicaid recipients and which has faithfully served the Tavernier community over the past year will be destroyed.

## JURISDICTION AND VENUE

3. This is a civil action arising under the Medicaid Act, 42 U.S.C. §§ 1396, *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and 42 U.S.C. § 1983.

4. This Court has jurisdiction of this action under 28 U.S.C. §1331 and 28 U.S.C. § 1367 with respect to Plaintiff's state law claim.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff is a Florida Corporation, with its principal place of business in Monroe County, Florida.  Plaintiff is owned and operated by Roxana Valderrama. Now with a staff of over twenty-five (25) therapists and technicians, Plaintiff provides quality at-home Behavioral Health Services to the Tavernier community.  The home care agency's clientele consists entirely of Medicaid recipients, all of whom are under the age of twenty.

7. Defendant Simone Marstiller is Secretary of AHCA and is sued in her official capacity. As Secretary of AHCA, Defendant Marstiller is responsible for the development, promulgation and administration of the unlawful policies challenged in this action.

## STATUTORY AND REGULATORY BACKGROUND

8. The Medicaid Program is a cooperative state-federal program that provides medical assistance to needy persons.

9. To be eligible for Medicaid, an individual must meet certain income and asset tests and other specific criteria.

10. To participate as a provider in any State's Medicaid Program, federal regulations, and Florida's Medicaid Statute, section 409.907, Fla. Stat., provide that health care providers must enter into a contractual provider agreement with AHCA.

11. For States, such as Florida, that have chosen to participate in the Medicaid Program, they are required to administer their state Medicaid Program in accordance with the Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* ("Medicaid Act"), its implementing regulations, which are located throughout Volume 42 of the Code of Federal Regulations, and various manuals promulgated by the Secretary of the U.S. Department of Health and Human Services ("the Secretary") and the Centers for Medicare and Medicaid Services ("CMS"), a subdivision of the Department of Health and Human Services.

12. Section 1902(a)(23) of the Medicaid Act requires that all individuals eligible for medical assistance, including those who are enrolled in a Medicaid managed care organization, may obtain healthcare services from any institution, agency, or person who undertakes to provide such services and is qualified to do so. 42. U.S.C. § 1396(a)(23). This provision is referred to as "freedom-of-choice" and has been recognized to impose a requirement of complete free choice by the Medicaid recipient in the selection of his source of healthcare services. At the same time,

however, in recognition that some providers may abuse the Medicaid Program, the Medicaid Act, provides states with an exception to the freedom-of-choice requirement that would allow some limited restriction on a provider's participation in the Medicaid Program. 42 U.S.C. § 1396n(a). If a State elects to restrict provider participation in conformance with these specified procedures, the State will not be deemed to violate the federal statutory mandate of freedom of choice. Federal law balances the Medicaid recipients' right to freedom-of-choice with the State's need to protect the public trust.

13. CMS has implemented federal law to clearly provide the limited manner in which states may restrict a provider's participation in the Medicaid Program. 42 C.F.R. 431.54(f); 42 C.F.R. § 455.422. These regulations set forth specific criteria that must be followed by any state that elects to terminate a provider from participating in the Medicaid program. Under 42 C.F.R. § 431.54(f), a state is only allowed to restrict a provider from participating in the Medicaid program for a reasonable period of time, and prior to imposing any such restriction, the state's Medicaid agency must meet certain conditions: (1) give the provider notice and an opportunity for a hearing; (2) find that the provider engaged in certain bad conduct: and (3) ensure that the restrictions do not result in denying reasonable access to Medicaid services. Similarly, 42 C.F.R. § 455.422 requires a state to give terminated providers "any appeal rights available under procedures established by State law or regulations."

14. The Medicaid Act and regulations require that each participating state must create and maintain a Medicaid State Plan, and that such a State Plan must receive prior approval by the Secretary. *See* 42 U.S.C. 1396a, *et seq*; 42 C.F.R. §§ 430.10 and 430.12. A states submission of its State Plan is a prerequisite to receiving federal grants and is necessary to assure CMS that it complies with all applicable federal statutes and regulations. 45 C.F.R. § 92.11(c).

15. Florida created a Medicaid State Plan, entitled State Plan Under Title XIX of the Social Security Act ("Florida State Plan"). Consistent with this requirement, the Florida State Plan contains assurances that AHCA will comply with the requirements contained in 42 C.F.R. § 431.54(f) as well as 42 C.F.R. § 455.422, both of which require the state to provide terminated providers with appeal rights. *See* Florida State Plan §§ 4.10 and 4.46 attached hereto as **Exhibit A**.

16. Contrary to these federal authorities, section 409.907(2), Fla. Stat., provides, in pertinent part, that all Medicaid provider agreements may be terminable by either party after reasonable notice, but does not offer any right to appeal.

17. Florida's State Plan, the one that CMS has approved, does not contain a provision that permits termination of a Medicaid provider agreement pursuant to section 409.907(2), Fla. Stat.

18. The Medicaid Act and regulations also require each State plan to include a statement providing that the State plan will be amended whenever necessary to reflect material changes in a State's law or in a State's operation of the Medicaid program, 42 C.F.R. § 430.12(c)(1)(ii), and that any amendments will be submitted to CMS for approval. 42 C.F.R. § 430.12(c)(2)(i).

19. Upon information and belief, the State of Florida has neither requested nor obtained approval from CMS for any State Plan amendment that would permit termination of a Medicaid provider agreement pursuant to section 409.907(2), Fla. Stat., and/or without following the requirements contained in 42 C.F.R. § 431.54(f) or 42 C.F.R. § 455.422. To the contrary, the existing State Plan provides that AHCA will comply with these regulations. Florida State Plan §§ 4.10 and 4.46. *See* **Exhibit A**.

20. The Florida Administrative Procedure Act ("*APA*"), section 120.54, Fla. Stat., provides detailed procedures whereby Florida administrative agencies, such as AHCA, may promulgate rules that effectuate their authority to regulate business pursuant to a grant of authority by the Legislature. AHCA has promulgated its termination policy by rule, however, it does not include appeal rights consistent with 42 C.F.R. § 431.54(f) or 42 C.F.R. § 455.422.

## FACTUAL BACKGROUND

21. Plaintiff was established as a Behavioral Analysis Group in September of 2020. It entered into the required standard Medicaid Provider Agreement to provide Behavioral Analysis ("*BA*") services to Medicaid beneficiaries, and was assigned Medicaid Provider Number: 108007500, effective September 14, 2020 through September 13, 2025. *See* **Exhibit B.**

22. BA services were added as covered Medicaid service, effective March 31, 2016, pursuant to an amendment to the Florida State Plan. BA services are limited to recipients under the age of twenty-one (21) who suffer from a variety of conditions and disorders, which includes patients with autism, spectrum disorders and other behavioral health conditions and are intended to address maladaptive behaviors and restore them to their best possible functional level. BA services are highly structured interventions, strategies, and approaches provided to restore appropriate behaviors by decreasing maladaptive behaviors. BA services can be provided up to 40 hours per week and it is expected that recipients can received services for six months, a year or longer.

23. Plaintiff's patients range in age from three years to nineteen years of age. The majority of these patients have autism, which they will have for their entire lives. On average, Plaintiff's patients receive treatment approximately five to six days a week for five (5) hours per day, but this, of course, varies by patient as some may require additional care depending on their particular circumstances and medical needs.

24. The care that Plaintiff provides is focused on assisting patients in decreasing maladaptive behaviors in order for them to improve their activities of daily living. Each patient has its own individualized behavior plan, which proposes specific interventions to reduce or eliminate the maladaptive behavior as well as replacement appropriate behaviors for the patients to engage in instead of the maladaptive behaviors.  Plaintiff also provides training of the recipient's family, caregivers, and other involved persons on the implementation of the behavior plan and intervention strategies.

25. Examples of the type of behavior analysis interventions include discrete trial teaching, task analysis training, differential reinforcement, non-contingent reinforcement, conducting task analyses of complex responses and teaching using chaining, prompting, fading, shaping, response cost and extinction.

26. Further, on a daily basis, Plaintiff collects data on each patient regarding their maladaptive behaviors and replacement skills.  This data is used to determine if the patient is improving or if there are any modifications that need to be made for the patient's individualized treatment plan.

27. In order to provide this level of service Plaintiff employs a staff of twenty-six (26) practitioners who are Board Certified Behavior Analysts or Behavior Technicians who have passed Board Examination and two (2) office staff.

28. Due to their conditions, it is difficult for these children to develop strong relationship with their caregivers; however, over time, the performance of these highly intimate and personal duties, the children do develop a strong relations ship with their therapists.  The abrupt termination of the Provider Agreement would disrupt these hard won relationships and break these bonds, which would be traumatic and impede the subsequent formation of good

working relationships with other caregivers to whom these children may be transferred if Plaintiff is no longer able to provide their care.

29. Further, in order to transfer these children to other providers, the re-approval and certification process that each recipient would have to undergo to initiate services with a new provider, if one was available, would cause a break in services. It would significantly delay the continuation of services at another provider, thereby inflicting additional trauma. In addition, because there are only three (3) other Medicaid-participating BA providers in Tavernier, Florida, it may be difficult to locate another provider to assume the care for Plaintiff's patients. Overall, forcing these patients to locate alternative caregivers will cause great disruption to their emotional well-being.

30. One hundred percent (100%) of Plaintiff's patient population is comprised of Medicaid recipients. Termination of Plaintiff's provider number will result in the complete closure of Plaintiff's business operations. This would result in the termination of employment of all twenty-eight (28) of Plaintiff's employees and an annual loss of revenue in the amount of approximately $500,000.

31. From its inception, there has *never* been any complaint regarding the quality of the care provided or Plaintiff's compliance with all Medicaid rules and regulations. Further, AHCA has not advised Plaintiff that there were any problems with the services it rendered nor has AHCA found that a in a significant number or proportion of cases, Plaintiff either furnished Medicaid services at a frequency or amount not medically necessary, or furnished Medicaid services of a quality that does not meet professionally recognized standards of health care. In fact, AHCA has not denied one claim for BA services that Plaintiff has rendered.

32. By letter dated December 16, 2021, which was received by Plaintiff on January 4, 2022, AHCA notified Plaintiff that it was terminating the provider agreement 30 days from the date of receipt of the letter ("***Termination Letter***").  *See* **Exhibit C**.  The Termination Letter merely stated that "the Agency has elected to exercise its termination rights under Section 8 of the provider agreement."  The Termination Letter did not articulate any reason for terminating Plaintiff's Medicaid Provider Agreements; nor did it provide any information concerning the rationale for AHCA's determination.

33. The Termination Letter did not articulate any reason for terminating Plaintiff's Medicaid Provider Agreements; nor did it provide any information concerning the rationale for AHCA's determination.

34. Additionally, the Termination Letter stated that "pursuant to Section 409.913, Florida Statutes, Medicaid will no longer pay for claims for reimbursement … after the date of termination."

35. However, Section 409.913, Fla. Stat., does not include such language and it only provides AHCA with authority to conduct oversight of the integrity of the Medicaid program. Lastly, Plaintiff received the Termination Letter on January 4, 2022. While the Termination Letter states that Plaintiff's Provider Agreement will not be terminated until thirty (30) days after receipt, which is February 3, 2022, on Wednesday, January 12, 2022, Plaintiff became aware that AHCA's online Provider Master List indicates that it intends to terminate Plaintiff's Provider Agreement effective Friday, January 14, 2022, more than 2 weeks early.  Notably, AHCA did not provide Plaintiff with notice of this early termination.

36. AHCA must comply with the entire Medicaid Act if it desires to continue participating in the Medicaid Program and receiving federal funding.  The summary termination

procedure engaged in by AHCA is directly contrary to the freedom-of-choice provision of the Medicaid Act in that a summary, without cause termination does not fit within the very limited exceptions set forth in 42 U.S.C. 1396n(a) as implemented by 42 C.F.R. 431.54(f). Specifically, AHCA did not afford Plaintiff a hearing prior to termination, nor has AHCA found that a in a significant number or proportion of cases, Plaintiff either furnished Medicaid services at a frequency or amount not medically necessary, or furnished Medicaid services of a quality that does not meet professionally recognized standards of health care. In fact, to the contrary, all claims submitted by Plaintiff were approved and then paid by AHCA.

37. Similarly, while AHCA referred to section 409.913, Fla. Stat., in its Termination Letter, it did not make the appeal process required under that section available to Plaintiff, nor did it make the appeal process set out in Chapter 120, Fla. Stat., in accordance with 42 C.F.R § 455.422. However, it appears that it might reflect that the termination was, in fact, for cause, which would be subject to section 409.913, Fla. Stat.

38. Had AHCA made allegations of misconduct by Plaintiff, AHCA would have had to provide a hearing prior to termination. 42 U.S.C. § 1396n(a); 42 C.F.R. § 431.54(f). AHCA's failure to follow these criteria put it out of compliance with federal law.

39. Because states in the Medicaid program are required to provide procedural safeguards when they restrict provider's participation in the Medicaid Program, AHCA's summary termination of a provider without any safeguards is completely contrary to the federal Medicaid Act. 42 C.F.R. § 431.54(f); 42 C.F.R § 455.422. State agencies are not permitted to sidestep federal due process requirements by terminating the provider agreement without any articulation of its reason for their actions or a hearing to dispute any allegation. *Id.* Moreover, because AHCA contends it has no responsibility to articulate any reason for its decision, there is

no safeguard to protect Plaintiff or any other provider from arbitrary and capricious decision-making.

40.     Indeed, AHCA knows this.  It has made assurances to CMS in its State Plan that it will comply with 42 C.F.R. §§ 431.54(f) and 455.422 for *all* terminations of provider enrollment. *See* Florida State Plan at §§ 4.46 and 4.10.  Further, AHCA has not amended its State Plan to allow it to terminate a provider "without cause."

41.     Section 409.913, Fla. Stat., lists the various sanctions that can be imposed on a Medicaid provider for failure to comply with Florida's Medicaid program. All of the sanctions listed in section 409.9131(13)-(16), Fla. Stat., are those imposed for cause.  In conjunction with this section, section 409.913(16), Fla. Stat., states that "The agency's termination with cause is subject to hearing rights as may be provided under chapter 120."  Thus, it is clear that under Florida law a Medicaid provider is entitled to due process for the termination of a provider agreement based on cause.

42.     Plaintiff owns two other providers that were participating Medicaid providers. All three of these facilities provided different types of services, were located in different areas, were in good standing with the Medicaid program, and did not have any claim denials or quality issues.  In fact, the other two providers had and still have Medicare provider numbers, yet AHCA terminated these providers' Medicaid agreements, and when Plaintiff applied to re-enroll after being terminated, AHCA denied these applications at the same time, as follows:

| Provider | Provider # | Provider Agreement Effective Date | Provider Agreement Termination Date | Re-Application Denial |
|---|---|---|---|---|
| Today's Home Health | # 09671000 | Jan. 9, 2017 | Aug. 16, 2021 | Dec. 16, 2021 |
| Mental Health | # 105045200 | Dec. 14, 2019 | Aug. 16, 2021 | Dec. 16, 2021 |

11

| | | | | |
|---|---|---|---|---|
| Network-Homestead | | | | |
| Mental Health Network-Tavernier | #108007500 | Sept. 14, 2020 | Dec. 16, 2021 | |

43. Like its termination of Plaintiff's Provider Agreement, AHCA did not provide any reason for its termination of my other two participating Medicaid providers nor did AHCA provide a reason for denying my re-applications.

44. Based on the circumstances and the timing of the terminations and re-application denials, coupled with lack of any reason(s) for its action, Plaintiff believes that the termination of its Provider Agreement is a pretext and that AHCA has an unstated reason for termination.

45. Contrary to the fundamental dictates of justice, due process, and Federal statutes and regulations, Plaintiff has been afforded no opportunity whatsoever to explain, refute, and rebut any concerns AHCA may have.

46. AHCA's decision to terminate Plaintiff's Provider Agreement effective February 3, 2022, without explanation has resulted and will result in irreparable injury because Plaintiff's right to due process, as envisioned by 42 C.F.R. §§ 431.54(f) and 455.22 has been violated.

47. AHCA's action, if allowed to stand, will completely destroy both Plaintiff's business and the continuity of care of its patients, all of whom are under the age of twenty-one (21) and suffer from a variety of conditions and disorders, which includes patients with autism, spectrum disorders and other behavioral health conditions.

## CLAIMS

### COUNT I – VIOLATION OF THE MEDICAID ACT AND REGULATIONS

48. Plaintiff re-alleges and incorporates paragraphs 1 though 47 as though they are set forth herein.

49. Defendant has acted beyond her authority under the Medicaid Act and regulations by purporting to terminate Plaintiff's Provider Agreement in violation of the Medicaid Act and regulations, and the Florida State Medicaid Plan.

50. As a result of Defendant's unlawful action, Plaintiff has suffered and will continue to suffer irreparable harm.

51. Plaintiff has no adequate remedy at law to correct Defendant's violation of the Medicaid Act and regulations, and the Florida State Medicaid Plan.

### COUNT II – VIOLATION OF DUE PROCESS OF LAW

52. Plaintiff re-alleges and incorporates paragraphs 1 through 47 as though they are set forth herein.

53. Defendant's action to summarily terminate Plaintiff's Provider Agreement without affording it any administrative or judicial appeal as required by 42 C.F.R. §431.54(f) deprives Plaintiff of its rights to due process of law guaranteed under the Fourteenth Amendment to the United States Constitution.

54. As a result of Defendant's unlawful action, Plaintiff has suffered and will continue to suffer irreparable harm.

55. Plaintiff has no adequate remedy at law to correct Defendant's violation of the Medicaid Act and regulations, and the Florida State Medicaid Plan.

### COUNT III – ARBITRARY AND CAPRICIOUS ACTION

56. Plaintiff re-alleges and incorporates paragraphs 1 through 47 as though they are set forth herein.

57. Defendant's decision to summarily terminate Plaintiff's Provider Agreement without articulating any reason(s) to justify its action, is arbitrary and capricious and not otherwise not in accordance with the law.

58. As a result of Defendant's unlawful action, Plaintiff has suffered and will continue to suffer irreparable harm.

59. Plaintiff has no adequate remedy at law to correct Defendant's violation of the Medicaid Act and regulations, and the Florida State Medicaid Plan.

## COUNT IV – DECLARATORY JUDGMENT

60. Plaintiff re-alleges and incorporates paragraphs 1 though 47 as though they are set forth herein.

61. Plaintiff has standing to bring this action by virtue of its rights under the Provider Agreement.

62. Defendant's summary termination of Plaintiff's Provider Agreement, without articulating and reason(s) to do so, has caused Plaintiff to suffer irreparable harm.

63. If Defendant's summary termination of Plaintiff's Provider Agreement is not prevented, Plaintiff will continue to suffer irreparable harm in the future.

64. Plaintiff has no adequate remedy at law to correct Defendant's violation of the Medicaid Act and regulations, and the Florida State Medicaid Plan.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

A. Declare that Defendant's summary termination of Plaintiff's Provider Agreement is unlawful because it is in direct conflict with the Medicaid Act and regulations, and the Florida and United States Constitutions;

B. Declare that Defendant's summary termination of Plaintiff's Provider Agreement is arbitrary and capricious;

C. Enjoin AHCA from terminating Plaintiff's Provider Agreement under Provider Number: 108007500.

D. Award Plaintiff its costs, including reasonable attorney's fees, of this action; and

E. Grant such other and further relief as this Court may deem reasonable and just.

Dated: January 13, 2022

Respectfully Submitted,

*/s/ Julian A. Jackson-Fannin*
Julian A. Jackson-Fannin, Esq.
Florida Bar No.: 93220
**DUANE MORRIS LLP**
201 S. Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone: (305) 960-2253
Facsimile: (305) 402-0544
jjfannin@duanemorris.com
pnmendoza@duanemorris.com
yarnavat-parga@duanemorris.com

*Counsel for Plaintiff*